The next case for argument is 25-1127, Kendall Nygard v. City of Orono. All right, very well. Ms. Nielsen, we'll hear from you first. You may proceed. Thank you, Your Honor. Good morning. Counsel, Your Honors, may it please the Court, my name is Elizabeth Nielsen, representing appellant Kendall Nygard. Defining and finding legal malice is the issue before this Court for a malicious prosecution claim under the circumstances of Kendall Nygard, who was criminally charged under an unapplicable ordinance. As this Court previously stated regarding Mrs. Nygard, malicious prosecution claims require a want of probable cause for the prosecution, not a want of probable cause for unprosecuted offenses. The district court below erred in both law and in fact. We ask that you reverse and remand. Kendall Nygard was charged under Orono City Code Ordinance 8666B, which requires the individual who performs the work to obtain or submit a permit application. Her husband, Jay Nygard, performed the work and submitted a permit application, not Kendall Nygard. There was never any evidence that Kendall Nygard was involved with the performing the work on the driveway nor her submitting any permit application. Jay Nygard did both. As far as the definition of malice, first we presented to the district court evidence that should allow the case to go forward to trial. Based on a definition of malice we can all agree applies. That malice is that which is done knowingly and willfully. We showed evidence that city officials prosecuted Kendall knowingly and willfully and that being wrong. City official Jeremy Barnhart was the community development director of Orono, and he knew when he referred Kendall Nygard to prosecution several different things. He knew Orono City Code of Ordinances. He knew the text of 8666B and other ordinances. He knew that he was communicating throughout this permitting dispute process with Jay Nygard. We see this in many places, including at Appendix 644. What about previous, you've said it twice so I've got to ask you, what about previous notices to Ms. Nygard? So Ms. Nygard was not directly noticed herself at any point before she was criminally prosecuted. She was CC'd on a number of e-mails after the permit dispute had already started and after the work on the driveway had already been performed. But the CC'ing on e-mails does not show evidence of her performing the work which is required of 8666B. And community- Do you know how many e-mails there were? Off the top of my head, I know we do list them in our statement of the case, but there were a number of e-mails. It may have been as many as 12. She was CC'd on many of them, but not all of them. Further, all of the letters were addressed directly to Jay Nygard and only to Jay Nygard. So at Appendix 644, we see one of those letters addressed to Jay Nygard, Mr. Nygard, this letter says. And what we need from you to complete the permitting process is for you to acknowledge the comments on the Builder Acknowledgement Form, which follows on the next page, which again had a number of things that Director Barnhart would later admit were merely suggestions that he was requiring Mr. Nygard to sign for, even though they were put in the conditions section. And Mr. Nygard refused to sign for unapplicable conditions. And that was part of the reason why the permit wasn't issued. But Mr. Barnhart knew he was not communicating with Kendall Nygard. He knew that he did not know that Kendall was involved in doing any of the work on the driveway. And we see that first in the criminal trial, at which Mrs. Nygard was dismissed. For instance, at Appendix page 484, 485, the Director gets the question, and you did that, referring to asking Mrs. Nygard to be charged criminally, you did that without any knowledge of her involvement in this process whatsoever. Is that correct? Answer, yes. Barnhart knew he had no knowledge of Mrs. Nygard. He further had said that in the previous page, Appendix 484, he did not know if she did any of the work. And he didn't know what she knew about even if the work was being done. And the only reason why he included her in the e-mail was because she was a co-owner of the property. So what's the best evidence of malicious intent? So this e-mail from Barnhart does evidence malicious intent. Malicious meaning willfully and knowingly wrong. Here he lumps in Mrs. Nygard with her husband when he writes, The use of the plural, the use of the word they, and he goes on to say later he knew he had only been communicating with J. Nygard. So saying that he had been communicating with Kendall Nygard when he knew that was not the case, that's not the case. Is a material misstatement of fact in even this short prosecutorial referring e-mail. Was there any Minnesota law at the time that said that a co-owner is not performing work on her own property if she authorizes it? I'm not aware of any Minnesota law. However, there is another ordinance that's come up in this case and when the Eighth Circuit previously saw it, 8636. It's a wholly different ordinance. It does require an owner of a property to obtain a permit after they receive notice that one is required. However, again, that is a different ordinance. This is a crime. Right. But I'm saying in order for maliciousness to occur, wouldn't the prosecution have to be on notice that the statute is inapplicable? The prosecution was on, well, the prosecution as in Jeremy Barnhart, the community development director. Or the investigator. Right. Have to be on notice that the statute is inapplicable. So I was asking whether it was clear that performing work requires physical performance as opposed to some other role in the performance of the work by an Right. Is there any case law on that in Minnesota? I think you said no. Not that I'm aware of on that specific point. However, when you're charging someone criminally, it's important to have knowledge if you're going to refer them to that prosecution of whether or not that person is guilty of the crime you are actually accusing them of. That doesn't give a prosecutor guilty of malicious prosecution. Your Honor, yes, it does. Barnhart had knowledge of the city code. He had knowledge of 8636, the code that would apply to an owner. And he had knowledge that he was asking for Kendall Nygaard to be charged under 8666, which requires performing the work. And he knew. No, he wasn't the prosecutor. No. He didn't have the final responsibility for initiating the prosecution. Your Honor. He referred it, basically. Right? So in this email, he refers it to the city prosecutor, who then accepts that word as true. And the city prosecutor submitted an affidavit. That doesn't make Barnhart malicious. Barnhart had knowledge of the city code. It was his job to know. And he crafted that email to make it appear. You can say that, but that's not a jury issue for me. I'm sorry. What's the citation for the email that you think is important? I believe it first appears in Appendix 41, or 31. It appears multiple other places. 31, though, we could find it. Thank you. I'd like to reserve the rest of my time. You may. Thank you for your argument. Mr. Shepard, we'll hear from you. I definitely have to adjust for height on this one. All right. Good morning. May it please the Court, Jared Shepard, along with my colleague, Jack Brooksbank, at the Council table, on behalf of the City of Warno. As we've just discussed, we're here about a malicious prosecution claim based on a permitting issue in the City of Warno. The City is asking you to affirm that a dismissal order entered by the trial court on summary judgment, but I would assert that the real discussion here, because this court can affirm on any grounds supported by the record, is the issue of prosecutorial discretion. The record is very clear, and the real through line here is that Mr. Barnhart referred the And I'll give the Court another citation for that referral document. It's Appendix 668 is where it also appears. And what you'll see there is an email with a series of attachments, which is kind of the record of correspondence on the permitting issue that was then sent to Mr. Tallon. And that's important because Mr. Tallon has an affidavit in the record before this determination, like most prosecutors do. We expect that to happen. He did so here. There is no evidence in the record advanced to call into question that independent referral. It's very similar to the Flowers v. City of Minneapolis case that's cited by the City, where there was testimony from a prosecutor that they made an independent decision based on the information that was in front of them. And the Court found there was nothing in the record to challenge the veracity of the statement of the prosecutor. Therefore, there was no question of fact with respect to whether there was an intervening cause. And that's what we have here, ultimately and most straightforwardly, an intervening cause by Mr. Tallon. I think it's also important to note that Mr. Tallon doesn't simply run with anything Mr. Barnhart puts in front of him. Also in the record, this is Appendix 651 through 653, you have some letters from Mr. Tallon where he declined to prosecute a matter that Mr. Barnhart referred to him. So again, he's exercising that independent discretion of a prosecutor. And finally, kind of in that same— I don't understand. How does that help? I mean, you can exercise discretion in a way that's malicious. Well— The fact that he exercises discretion is true, I guess, of almost any prosecutor. But we have to go beyond that, don't we, to decide whether in this case his exercise of discretion was a tort? Well, Judge Colleton, the reason why Appellant is talking about Barnhart v. Mr. Tallon's actions is because Mr. Tallon's actions are protected by prosecutorial immunity. Okay. So if we are talking about what he did in his decision and his discretion, then it's absolutely emphatically protected by prosecutorial immunity. And the Brosser v. Scott County case says that that flows up vicariously to the city. So that's why we're—that's why Appellant is talking about Mr. Barnhart. But in the line of cases from Minnesota State law on malicious prosecution, Dunham v. Rohr, which is cited in the record in the briefing, it's very clear that if there is that break in causation because of an independent decision by a prosecutor, that also negates, emphatically negates, the malicious prosecution claim. I see. That's your point about the prosecutorial discretion. Yeah, that's my point. That Barnhart didn't make the decision, the prosecutor did, so there's a break in causation. That's your point? That's my point, Your Honor. And that, you know, if you look at cases like Young v. Class, the Allen v. Oscodrug case, those are cases where, you know, if you compare them to the facts here, there is an individual referring something to prosecution. So, in some senses, that would be like Barnhart, but the difference is, in those cases, they fabricated something. They— Well, what about the word they? They have completed work without a permit. So, it's very clear Mr. Barnhart's view of the code is that the property owners are on the hook for work that's done at their lot. 8666B is the provision that says you have to get a zoning permit for this type of work. And this Court previously said you cannot use 8666B or 8636. I'm sorry, it's 8636, right? You can't use—I looked at the wrong number. But this Court previously said you can't use Section 8636 to justify anything in this case. Is that a fair reading of what this Court said in 2022? That's a fair reading of what this Court said at the pleading stage, Your Honor.  So, the record of contacts that Mr. Barnhart had with both property owners was not in front of this Court at that time. In fact, the complaint said there was no evidence of contact with Kendall Nygaard, and that's simply not true. As the Court asked Ms. Nielsen earlier, there is at least four instances of cc'ing back and forth between Jay Nygaard, Jeremy Barnhart, and Kendall Nygaard. Whether or not someone is cc'ed or directly emailed, it's the same thing. We all know we get emails, we read them. I think it's important to know that the initial correspondence, interestingly enough, started with a conversation about driveway drainage where Mr. Nygaard was complaining to the city and cc'ed Kendall and was complaining about the street. The city said, hey, you should make some changes to your driveway. The next day, he started doing the driveway without a permit. But it's very clear from the record that Ms. Nygaard knew that activity was going to happen. It's a useful context, but it doesn't really matter. What really matters to the… What did she know when? I think they take the position she didn't know until after the dispute was well along. Your Honor. After the referral, but that can't be right. Judge Loken, I would say the evidence in the record points to the contrary. So they had just purchased that house. What evidence? When I go look for it. Absolutely. Appendix 605 through 613 is the conversation about the driveway drainage. Between whom? Mr. Nygaard, Ms. Nygaard, and Jeremy Barnhart. She was involved by phone, phone remote, or what? Email. This is a cc? Counsel, these are cc's you're referring to? Yes. These are cc's. Okay. Yep. And there is also evidence in the record, and I'm looking for the citation here, with respect to when they filled out the loan application for the house, they were contemplating work on the driveway. And that is a loan application that they filled out together as co-owners to the house. But again, I think it's context. I think what really matters for Mr. Barnhart in the malicious, the malice piece, right, is what he knew about the city code. And his understanding was they had to build, you needed a permit for this driveway, right? That's 8666B. His understanding was also, and he testified to this both at the criminal trial and then in his deposition, that both property owners were responsible for not getting permits for their property under 8636. Moreover, Mr. Tallon had filed criminal charges against other property owners under 8666B as couples. And so Mr. Barnhart had observed that that was a viable thing to do, and those were successful criminal prosecutions. And Mr. Tallon talks about that in his affidavit, that he had done that before. So all of that goes towards Mr. Barnhart's understanding of what was appropriate. And again, he is just making a referral to... That was before our first decision. So basically our NIGARD 1 was contrary to his understanding of the code. Is that what you're saying? So what I would say, NIGARD 1, obviously this court disagreed at the pleading stage with Judge Brazel's decision that 8636 and 8666B kind of work together, right? But the record was just what was in the complaint, which the court had to accept as true. Now we know that there was an entire correspondence between Barnhart and Kendall NIGARD and Jay NIGARD, and we also understand what Mr. Barnhart thought about what the code did, right? And that is important going straight to malice, what he understood. And that's in the record, and it's supported by what Mr. Tallon had did. But I think, again, I'm out of time, Your Honor. I just want to say that the, if I may, the through line here is that the independent decision of Tallon after he got the referral. Thank you. Thank you for your argument. We'll hear a brief rebuttal. Yes, Your Honor. Prosecutorial immunity does not apply, as we've argued in our briefs, because even a prosecutor's non-prosecutorial functions, such as in the investigatory stage, are not subject to prosecutorial immunity. And here, if you review the record, Tallon, the prosecutor, relied on the statements made by Barnhart, which, again, were made knowingly, given the code and given how he phrased it to make it appear that he had knowledge. You know, that just makes no sense. I understand that, temporarily, what you're saying, but the fact that he relied on Barnhart's referral in deciding to prosecute, you're saying that was not a prosecutorial decision? Your Honor, there was no investigation by Tallon or anyone else to ascertain Kendall's involvement. Wait a minute. The extent of the prosecutor's investigation? Which was none. Well, wouldn't the prosecutor typically have investigators like Barnhart provide the investigation, and then the prosecutor makes a judgment based on the investigative file? So it appears that all Tallon reviewed was what Barnhart forwarded to him. Tallon then drafted a probable cause statement, which was... Quite properly so in the chain of command. Perhaps. However, no one... Decision to prosecute is still immunized. Your Honor... That part of it, including the information, you know, the information relied on. If every prosecution or decision to prosecute were protected, then the tort and malicious prosecution would not exist. It has to go in... Don't say that. Come on. That's ridiculous. Yes. That's beyond a pale exaggeration. That's why the decision to refer is our evidence. And here, all the communications with Kendall, these e-mails, they're not evidence of her performing the work, which, again, is the thing she was actually charged with. If we have a pair of spouses, a husband and a wife, the husband commits a robbery, then it doesn't follow to also charge the wife with robbery because you don't have knowledge that she was not involved. That's essentially what the district court said when making a factual determination about Barnhart's knowledge and in saying that we didn't bring evidence that that is malice or at least disputably malice, such as in the district court's opinion at 12 footnote 4. We do ask... I'm afraid your time has expired.  But we appreciate the argument and appreciate both counsel. The case is submitted and the court will file a decision in due course.